UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
NOV 29 2006
CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| ROGER HOHN, f/d/b/a/ Sioux Falls Advanced Physical Therapy, | \* \* \* | CIV. 05-4164 |
| Plaintiff, | \* \* | MEMORANDUM OPINION AND ORDER |
| -vs- | \* \* | |
| STEPHEN SPURGEON, | \* \* | |
| Defendant. | \* \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending are defendant's motion for summary judgment (Doc. 21) and plaintiff's motion to amend the complaint (Doc. 32).

## BACKGROUND

Plaintiff Roger Hohn ("Hohn") is the owner of a former business known as Sioux Falls Advanced Physical Therapy (SFAPT).[1]  SFAPT provided non-surgical back pain management treatments using Vax-D (vertebral axial decompression), among other methods.  In October, 2002, Hohn was told SFAPT was approved for Wellmark plan coverage so SFAPT would be paid for services rendered to patients who were covered by Wellmark. SFAPT submitted to Wellmark many claims which were paid.  In December, 2002, Hohn received notice from Wellmark that all SFAPT claims were being reviewed and payment would be stalled for 60 days.  In February, 2003, these claims still had not been paid.  Hohn called Wellmark and threatened to stop treating patients covered by Wellmark.  He was told he could not stop treating Wellmark insureds because he was contractually obligated with Wellmark to treat their insureds.  On March 14, 2003, defendant Stephen Spurgeon ("Spurgeon"), Senior Vice President for Provider Relations for Wellmark's Board of Directors, visited SFAPT at its clinic in Sioux Falls and met with Hohn.  During the meeting

---

[1]The record does not establish Hohn's personal medical status as a doctor.  One of the issues between Wellmark and SFAPT was the existence of a medical doctor on staff or on site.

Spurgeon said SFAPT had not yet been approved by Wellmark, but was corrected and was advised that Laura Sibson in October, 2002, had personally informed Hohn that SFAPT was approved by the Board of Directors for Wellmark. Spurgeon became angry and left the clinic. On March 28, 2003, Hohn called Spurgeon to confirm that Spurgeon had verified for himself that SFAPT was indeed an approved contractor with Wellmark. Spurgeon told Hohn that he, Spurgeon, had not verified the information and that Hohn should talk to Laura Sibson in the future. On April 15, 2006, Hohn was notified that Spurgeon had ordered Wellmark adjusters handling SFAPT claims to forward the claims to him for evaluation and handling. Because the payments were still not forthcoming from Wellmark, Hohn reported the matter to the South Dakota Division of Insurance on May 8, 2003. A week later Hohn learned that Spurgeon had informed the South Dakota Division of Insurance that the claims SFAPT was asking Wellmark to pay were illegal and that Spurgeon would be filing a complaint with the South Dakota Medical Association against SFAPT. On May 19, 2003, Spurgeon instructed Wellmark staff to refuse delivery of medical records from SFAPT which were sent to document claims. On July 11, 2003, the contract between SFAPT and Wellmark was terminated by Wellmark.

Hohn formerly doing business as SFAPT sued Spurgeon in a single cause of action for interference with Hohn's business relationship with Wellmark. Spurgeon filed his motion for summary judgment asserting that an employee of a corporation cannot be successfully sued for tortious interference with his corporate employer's contract. In addition to resisting the motion for summary judgment, plaintiff filed a motion to amend his complaint to allege that Spurgeon also interfered with Hohn's business relationships with Hohn's patients who are Wellmark insureds.

## DISCUSSION

1. **Summary Judgment Standard**

When the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue about any material fact and that the moving part is entitled to judgment as a matter of law, summary judgment is appropriate. Fed.R.Civ.P. 56(c); Jankovitz v. Des Moines Independent Community School Dist., 421 F.3d 649, 652-653 (8th Cir. 2001). "Where the unresolved issues are primarily legal, rather than factual, summary judgment is particularly appropriate." Id.

## 2.   Plaintiff's claims

Hohn maintains there are fact questions to resolve which preclude entry of summary judgment, namely (1) Spurgeon's interference with the processing of insurance claims made to Wellmark by SFAPT for services rendered to patients of SFAPT, insureds of Wellmark; (2) Spurgeon's refusal to accept medical records from SFAPT; (3) Spurgeon's delaying and denying claims; and (4) Spurgeon's failing to communicate policy information to SFAPT.  Hohn asserts Spurgeon buried claims for payments made by SFAPT even after he learned that Hohn wanted to stop treating Wellmark insureds because Wellmark was not paying claims for their treatment, which in turn caused SFAPT to suffer significant economic hardship.  Hohn argues Spurgeon was motivated by his desire to secure a $107,000 bonus which he would receive if Spurgeon's employer achieved certain profit goals.  Profits were increased as a result of Spurgeon's actions in denying claims made by SFAPT, according to Hohn.  Hohn asserts that both Spurgeon and Spurgeon's successor acknowledge that denying a claim without reviewing it is a violation of duty owed to insureds of Wellmark. To support this argument Hohn offers as an example that SFAPT claims coded 97010 would be denied "X138"–for lack of clinical documentation–regardless of the documentation supplied by SFAPT because it was not coded as 97012.  Then, even if a claim was coded 97012, it would be denied as not coded 97012 as a result of Spurgeon's internal directives about SFAPT claims. Hohn claims he was being stonewalled. His calls to ask for explanations and instructions about coding and documentation of claims went unanswered.  Hohn argues that despite Spurgeon's provider relations duties Spurgeon refused Hohn's telephone calls, failed to correct internal staff misunderstandings at Wellmark about SFAPT claims, and ignored the suggestion from his supervisor that Spurgeon should personally contact SFAPT about Wellmark's expectations of SFAPT. The very same types of claims and codes which were denied after Spurgeon's involvement had been paid before his involvement. Hohn urges it was outside Spurgeon's job responsibilities for him, a medical doctor charged with provider relations, to personally handle and process claims. Yet, that is exactly what happened regarding the claims from SFAPT.  Hohn argues that Wellmark terminated his provider contract as a result of Spurgeon's actions.  Hohn also argues Spurgeon ignored the plight of insureds of Wellmark.  They were not deprived of money, but they were deprived of a treatment option which was helpful to them. Termination of SFAPT's contract was contrary both to the best interests of Wellmark and its insureds, according to Hohn.

3

### 3.   Defendant's claims

Spurgeon claims Hohn has no possibility of recovering from Spurgeon on the legal theory of tortious interference with contract because, in the eyes of the law, an employee (Spurgeon) cannot interfere with his corporate employer's contract. Spurgeon maintains he was acting within the scope of his employment with Wellmark at all times pertinent. Spurgeon maintains the decision to no longer pay SFAPT's claims was not Spurgeon's personal decision. Rather, it was a group decision made by the medical directors. Further, Spurgeon claims he never reviewed or denied any of SFAPT's claims. Spurgeon maintains not only does the law preclude Hohn's claim against Spurgeon, but also the absence of facts bars the claim, even assuming arguendo Hohn could successfully sue an employee for tortious interference with his corporate employer's contract. Spurgeon argues the coding and documentation problems were genuine and that Hohn even admits the problems were explained to him and his staff and they were instructed how to bill for VAX-D treatments under code s9090. Spurgeon argues Hohn admits numerous billing errors. Spurgeon points to Hohn's admissions of problems with coding, documentation and credentialing. Spurgeon also asserts he was not directly involved in the termination of SFAPT's provider contract. It was SFAPT's own non-compliance issues which triggered termination of its provider contract, according to Spurgeon. Spurgeon also asserts Hohn's patients who had Wellmark insurance were not liable to pay any money to SFAPT as a result of denials of SFAPT's claims for payment from Wellmark because, pursuant to its contract with Wellmark, SFAPT could not balance bill the patient for unpaid claims. Further, Spurgeon asserts, Wellmark insureds were not discouraged from seeking treatment from SFAPT. As a result, Spurgeon urges there could be no interference with Hohn's business expectation with his customers.

### 4.   Analysis

Certain facts are disputed by the parties. The disputed facts most favorable to Hohn have been accepted as true. It is undisputed that Spurgeon was an employee of Wellmark. It is undisputed the parties to the terminated provider contract are Wellmark and Hohn d/b/a SFAPT. It is undisputed that Wellmark terminated the provider contract. Hohn asserts Spurgeon was acting outside the scope of his employment, in bad faith, contrary to the best interests of Wellmark, and for reasons of personal interest.

4

A.   **Employee and His Corporate Employer Are the Same Party for Purposes of Tortious Interference with Corporation's Contract**

Plaintiff must prove the following in order to prevail on his claim for tortious interference with SFAPT's provider contract: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted. Tibke v. McDougall, 479 N.W.2d 898 (S.D.1992). In order for interference with a business relationship or expectancy to occur, there must be a triangle, (1) a plaintiff, (2) an identifiable third party who wished to deal with plaintiff, and (3) the defendant who interfered with the plaintiff and third party. Landstrom v. Shaver, 1997 SD 25, ¶75, 561 N.W.2d 1, *16. In the          Landstrom decision the South Dakota Supreme Court said about tortious interference with a business expectation:

> In *Nelson* we further determined that a corporate director cannot be held personally liable under this cause of action for conduct taken under a contract entered into by the corporation because the director can only act in the director's official capacity on behalf of the corporation.

Id., citing Nelson v. Webb Water Development Association, Inc., 507 N.W.2d 691, 700 (S.D. 1993). The South Dakota Supreme Court in Landstrom continued by saying,  "[o]ne contracting party does not have a cause of action against the other for conspiring to breach their [own] contract or for wrongfully interfering with its own contract." Landstrom, 561 N.W.2d at 16. Hohn argues Nelson is distinguishable because it is involves a lawsuit where a corporate director was sued as a result of termination of a corporate employee's employment contract. The South Dakota Supreme Court, however, did not limit the precedent in Nelson to employee termination situations. Landstrom involved a dispute among shareholders of a closely held corporation in which one of the plaintiff's theories for recovery was that other shareholders had interfered with her right to sell her stock to not yet identified persons. The South Dakota Supreme Court in    Landstrom relied upon its Nelson decision to state the rule that a triangle must exist before there can be tortious interference with a contract. In Landstrom, a dispute which did not involve an employee termination, the South Dakota Supreme Court said there is no triangle if the defendant in the lawsuit is an employee of a corporation which was a party to a contract with which the plaintiff claims the defendant/corporate employee interfered. Spurgeon was the employee of Wellmark. Wellmark terminated its provider

5

contract with Hohn.  As a matter of law Spurgeon, the employee of his corporate employer Wellmark, cannot be liable to Hohn for interfering with the provider contract between Wellmark and Hohn so long as Spurgeon was acting within the scope of his employment authority.

## B.   Defendant Was Acting Within the Scope of His Employment

Hohn urges there is a factual dispute whether Spurgeon's acts were within or outside the scope of his employment. The existence of a factual dispute would require Spurgeon's motion for summary judgment to be denied.  To frame the discussion, Spurgeon's pertinent statements of undisputed fact are stated below, followed by Hohn's pertinent responses to Spurgeon's statements of undisputed facts.

### 1.   Spurgeon's Statements of Undisputed Facts about Scope of Employment

At all times material to this action, Spurgeon was acting within his scope of employment. (Spurgeon Aff. ¶ 3; Andringa Aff. ¶¶ 4-5.) (Doc. 22, No. 3). Spurgeon claims there are additional, related facts about scope of employment which are undisputed. (Doc. 48,  Nos. 19-21, 24-28, and 34).

### 2.   Hohn's Response to Spurgeon's Statements of Facts about Scope of Employment.

Following are quoted statements from Hohn's responses (Docs. 31 and 51) to Spurgeon's statement of undisputed facts:

> Plaintiff disputes Defendant's statement in numbered paragraph 3. Hohn's business contracted with Wellmark of South Dakota without any involvement by Spurgeon. (Defendant's Ex A: provider contract) At the same time, other Blue Cross/Blue Shield agencies from other states were paying Hohn's clinic's claims. (Hohn Affidavit ¶¶ 6) Prior to Spurgeon's involvement, claims from Hohn's clinic had been processed and paid. (Hohn Affidavit ¶¶ 6, 8, 13, 14; Bryan Rubright Affidavit) (Doc. 31, No. 3).

> Spurgeon was the Executive Vice President for Provider Relations , yet he physically processed claims from Hohn's clinic. Based on his previous experience with Wellmark of South Dakota and other insurers, Hohn disputes that claims processing was a job responsibility for an insurance company vice president. (Hohn Affidavit ¶¶ 32, 33) Even if there were some reason why basic claims administration would be within the purview of a medically trained doctor at the level of a vice president, there is no legitimate employment duty which would permit Spurgeon to

6

refuse to accept an insured medical documentation from Hohn's clinic; refusing to accept medical documentation which would serve to support payment of a medical bill and then denying payment does not serve any legitimate purpose of Spurgeon's employer. (Bryan Rubright Affidavit; Hohn Affidavit ¶¶ 26, 27, , 28 32,33) (Doc. 31, No. 3).

Plaintiff disputes Defendant's statement in numbered paragraph 19. After brief formalities, Spurgeon suggested that Hohn was a criminal, a thief and a liar; Hohn and Spurgeon got into a heated argument about whether the Wellmark MPAC (which Spurgeon had not had a part in) had recommended the continuation of its policy of paying for VAX-D treatments. (Hohn Depo 124, 125, 128; Sibson Depo 76. 78, 80; App Tab 3) Hohn didn't want a confrontation because he wanted the SFAPT claims paid. (Hohn Depo at 126, 133) Spurgeon got angry and stormed out. (Hohn Depo at 126, 132) On the way back from the meeting, Spurgeon talked to a subordinate (Duffy) who told him that there was "not very good documentation" on the charts. (Spurgeon Depo at 74) Spurgeon admits that he did not know "whether it's there or not, don't know." (Spurgeon Depo at 97). (Doc. 51, No. 19).

Plaintiff disputes Defendant's statement in numbered paragraph 20 is material. Spurgeon had a specific agenda for the SFAPT meeting and therefore can not claim that he was present only because he was planning to attend another meeting. (App. Tab 7) (Doc. 51, No. 20).

Plaintiff disputes Defendant's statement in numbered paragraph 21. Spurgeon's job duties were to improve provider relationships and communicate Wellmark's policies and procedures; he is also supposed to see to the accurate and timely paying of claims as his first job accountability. (App. Tab 6) He alienated Hohn with an argument during his meeting, subsequently advised that Hohn's claims would continue to be denied up front unless a specific billing code was used regardless of the services provided and generally ignored SFAPT's attempts to comply with Wellmark documentation policies. (App . Tab 8; Hohn Depo at 98, 99, 100; Sibson Depo at 70). His actions toward Hohn, SFAPT and a Wellmark insured SFAPT patient conflict with his written job description. )App. Tab 6; spurgeon Depo at 183, 184, 185) (Doc. 51, No. 21).

Plaintiff disputes Defendant's statements in numbered paragraph 24, 25, 27, and 28. In an e-mail dated March 17, 2002, Wellmark employees documented that Spurgeon indicated that "claims that come in coded as 97110, 97530, 97112, 97010 or codes other than 97012 should continue to be denied up front X138." (App. Tab 8, p. 33) Because claims were denied "up front" without a review by anyone because of his "indication, " it is not accurate to suggest that Spurgeon did not direct the denial of claims. The e-mail clearly indicates that this was Spurgeon's directive rather than a group decision made by medical directors. It is not ever appropriate to deny an insured's claim without reviewing it. (Pekas Depo at 22) That would be a violation of the duty owed to the insured. (Pekas Depo at 22).

Plaintiff disputes Defendant's statement in numbered paragraph 26. It is improper and bad faith to deny a claim without reviewing it. It is not ever appropriate

to deny an insured's claim without reviewing it. (Pekas Depo at 22) That would be a violation of the duty owed to the insured. (Pekas Depo at 22). (Doc. 51, No's. 24, 25, 27, 28).

Plaintiff disputes Defendant's statement in numbered paragraph 34. The medical director who signed the termination letter, Dr. Pekas, was a recent hire who was provided with a completed form letter to sign and directed to send it. (Pekas Depo at 33) He had no input into the termination decision. (Pekas Depo at 33, 34) He was involved only because he was named as the medical director for South Dakota. (Pekas Depo at 30) He had no firsthand knowledge about Hohn's clinic and did not talk to any other medical directors, Sibson or his supervisor, Dr. Andringa, about it. (Pekas Depo at 30, 31, 32) According to Hohn, Pekas told Hohn that Spurgeon was the person deciding to terminate his contract. (Hohn Depo at 156, 157) (Doc. 51, No. 34).

### a.   Analysis of Scope of Employment Issue

Spurgeon's direct supervisor has submitted an affidavit explaining Spurgeon's actions were within the scope of his employment with Wellmark. In opposition, Hohn has directed the Court to many record citations. Some are general statements. Some criticize Spurgeon's actions and some are from persons other than Spurgeon's employer. In the face of a clear concise statement from his employer to the contrary, these general and conclusory statements, however, do not sufficiently create a genuine issue of material fact regarding whether Spurgeon acted outside the scope of his employment.  See Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1109 (8th Cir. 1998) ("conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."); LaCroix v. Sears, Roebuck & Co., 240 F.3d 688, 691 (8th Cir. 2001) ("general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion.").

Plaintiff has likewise identified no material fact indicating that Spurgeon acted contrary to Wellmark's interests during his dealings with SFAPT. Hohn argues that Spurgeon acted from personal motivation earn a $107,000 bonus by decreasing claims paid to increase Wellmark's profits. There are no record facts to suggest however, the non-payment of SFAPT claims and Spurgeon's $107,000 bonus are connected. Spurgeon's deposition testimony, cited by Hohn, is insufficient to make the connection.

8

**C.**     **Hohn's Motion to Amend and Analysis of SFAPT Patients as Third Parties to the Triangle**

To establish the third leg of a triangle, and to overcome Spurgeon's argument that he cannot be liable for tortiously interfering with his corporate employer's contract, Hohn wishes to amend his complaint to allege his customers/patients are an identifiable third party. Hohn relies on Hayes to argue that customers/patients of SFAPT are identifiable third persons with whom Hohn had a valid business expectancy with which Spurgeon unjustifiably interfered. Hayes v. Northern Hills General Hospital, 590 N.W.2d 243 (S.D. 1999). While Hayes supports the proposition that persons seeking medical care in a specific community are an identifiable third party for purposes of establishing a triangle in a tortious interference case, there are neither allegations in the proposed amended complaint nor facts in the record to suggest that Spurgeon personally interfered with any of the relationships between SFAPT and its patients. In order for Spurgeon to interfere with the business relationships and expectancies that SFAPT had with its patients, one of two scenarios must exist. Either (1) Spurgeon directly interfered with patients of SFAPT; or (2) Spurgeon indirectly interfered with SFAPT patients by interfering with the relationship between Wellmark and SFAPT patients. There are no facts alleged in the proposed amended complaint or in the record to suggest that Spurgeon directly interfered. As explained earlier, as a matter of law a corporate employee cannot interfere with his corporate employer's contract so long as he is acting within the scope of his employment.     Because there are no material facts in the record to suggest Spurgeon directly interfered with customers/ patients of SFAPT and because Spurgeon cannot indirectly tortiously interfere the business relationship between his corporate employer and a third party (its insured's in this instance), naming patients of SFAPT as the identifiable third party with which SFAPT had a valid business expectancy is futile.

Additionally, the motion to amend was made after the Rule 16 Scheduling Order (Doc. 17) deadline for amending pleadings. Pursuant to Fed. R. Civ. P. 16(b), good cause must be shown to amend pleadings after the deadline has passed. No good cause has been shown.

## CONCLUSION AND ORDER

Defendant Spurgeon was an employee of Wellmark. As a matter of law Defendant Spurgeon, Wellmark's corporate employee, cannot tortiously interfere with Wellmark's contract with Sioux Falls Advanced Physical Therapy unless Dr. Spurgeon was acting outside the scope of his employment. Plaintiff has failed to set forth specific record facts to make such a showing. Defendant is therefore entitled to judgment in his favor as a matter of law. It is therefore

**ORDERED** that:

(1)     Defendant's motion for summary judgment (Doc. 21) is GRANTED; and

(2)     Plaintiff's motion to file amended complaint (Doc. 32) is DENIED.

Dated this 29th day of November, 2006.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk

By Shelly Margulie Deputy